IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY M. TIERNEY,

                   Plaintiff,

   v.

BNSF RAILWAY COMPANY,

                  Defendant.

OPINION and ORDER

23-cv-477-wmc

---

This is a workplace injury lawsuit brought under the Federal Employers' Liability Act (FELA). Plaintiff Timothy M. Tierney alleges that he was injured while working for defendant BNSF Railway Company (BNSF) at its carshop in Superior, Wisconsin. Tierney claims he was repairing a BNSF railcar by using a piece of machinery called a PowerPusher to pull the railcar's wheels out from under the car. According to Tierney, the PowerPusher did not stop when he put it in reverse, and it pinned Tierney against another piece of machinery. Tierney's abdomen was crushed, requiring multiple surgeries. Tierney filed suit, alleging BNSF failed to provide a reasonably safe workplace by failing to provide safe and proper tools and equipment, failing to properly inspect, repair and maintain the PowerPusher, and failing to warn Tierney about the PowerPusher. BNSF denies wrongdoing.

Now before this court are competing discovery motions. Tierney seeks to compel BNSF to comply with certain document requests and to prepare a corporate representative to testify at a deposition on certain topics. Dkt. 9. On the document requests, Tierney wants BNSF to produce system-wide incident reports for injuries involving the PowerPusher for the ten years leading up to his injury. He also wants BNSF to search for an e-mail that he reportedly sent in May 2022 concerning an incident that he witnessed involving a PowerPusher. On the

deposition topics, Tierney wants BNSF to prepare a corporate representative to testify to system-wide training, maintenance, and purchase history of the PowerPusher.  BNSF opposes Tierney's motion, arguing that the requests are overbroad and would require BNSF to shoulder a burden disproportionate to the needs of the case.  BNSF filed a competing motion for a protective order specific to the deposition topics.  Dkt. 24.

For the reasons below, each of these motions is GRANTED in part and DENIED in part.[1]

LEGAL STANDARDS

The parties' motions debate the bounds of permissible discovery for this case.  Whether information is discoverable is governed by the Federal Rules of Civil Procedure, specifically here, Rules 26 and 30, which ultimately turn on relevancy and proportionality.  Whether information is relevant depends on the substantive law of the case, specifically here, the Federal Employers Liability Act (FELA).

**A. Scope of discovery**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  The court may limit otherwise-allowable

---

[1] While these discovery motions were pending, BNSF filed another discovery motion.  Dkt. 29. That motion is not yet fully briefed, so it will be addressed separately in due course.

2

discovery if the discovery sought is unreasonably cumulative or duplicative; it can be obtained from some other source that is more convenient, less burdensome, or less expensive; or the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.  Fed. R. Civ. P. 26(c).

## B. FELA

FELA provides a federal tort remedy for railroad workers injured on the job.  *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998).  FELA requires railroads to exercise reasonable care to provide a reasonably safe workplace.  *Id.*  To succeed on a FELA claim, a plaintiff must show that the defendant railroad was negligent, and the defendant's negligence caused or contributed to plaintiff's injuries.  *Id.*  Specifically, a plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation.  *Id.*

ANALYSIS

## A. Requests for documents

Tierney's motion to compel implicates two requests for production—a request for documents related to any incident in the BNSF system involving a PowerPusher for the ten years leading up to Tierney's injury and a request for a March 2022 email concerning a PowerPusher incident.

### 1. Request No. 5

Tierney seeks to compel BNSF to produce documents responsive to Request No. 5, which essentially seeks all documents related to any incident involving a PowerPusher that occurred within the entire BNSF system for the ten years leading up to Tierney's accident.  The language of the request reads:

> All documents that constitute, reflect, describe, summarize or refer to any accident, incident or investigation reports or files, including claims files, regarding any previous injuries or previous claims involving the PowerPusher, ground, lighting at Defendant's Superior, Wisconsin facility, or any other facility, system-wide, for the [ten] years prior to Plaintiff's injuries as alleged in the Complaint, and thereafter to date, and if so, state when, where, who and state in detail what occurred.

Dkt. 12, Fuller Decl., Exh. 13 at 5; Dkt. 10 at 6 (advising that, since serving the request, Tierney has agreed to limit the scope to ten years, instead of twenty years, prior to his injury).

Tierney argues that evidence of prior similar injuries is relevant to showing reasonable foreseeability.  Dkt. 10 at 11-12 (citing collection of cases).  BNSF concedes relevancy, at least in part, reporting that "BNSF does not dispute that information regarding other incidents may be relevant, so long as it complies with the scope of discovery and proportionality strictures of Rule 26."  Dkt. 17 at 33-34.  BNSF attempts to parse relevancy and proportionality by geography and time, but these arguments fall short.  BNSF argues that incident reports from the Twin Cities division[2] from five years prior to Tierney's incident are relevant, while reports outside that geographic and temporal scope are not.  *See id.*  But it does little to explain why that is the case.  BNSF does not explain, for instance, how the railcar facilities outside the Twin Cities division are functionally dissimilar to the Superior carshop.  Nor does it explain why the five-year cut-off is significant.

BNSF also argues that searching for reports outside its proposed geographic and temporal scope would be unduly burdensome, dkt. 17 at 24, but the record suggests otherwise. BNSF's Director of Safety Reporting and Analysis testified in another matter involving BNSF that BNSF maintains an electronic database that houses prior incident reports back to 1975,

---

[2] BNSF describes this division as encompassing operations in Wisconsin, Minnesota, the Dakotas, parts of Iowa, and parts of Nebraska.  Dkt. 17 at 9.

that the database can be queried, and that running the queries is relatively easy.  Dkt. 16, Weber Dep., at 16:4-5, 24:9-12, 27:22-28:25, 30:13-31:23, 48:21-49:2, & 50:10-22.  In fact, BNSF did run a search for incident reports, albeit limited to the Twin Cities division for the five years prior to Tierney's incident.  Dkt. 17 at 34.  While BNSF calls Tierney's broader request a "fishing expedition," *id.*, BNSF does not explain whether or how the broader search would involve significantly more work.

Finally, BNSF argues that incident reports and related documentation, like claim files, would contain other employees' personal information.  But these concerns can and should be addressed through protective measures; they are not a basis to shut down discovery of relevant material.  The parties should meet and confer to discuss the appropriate protective measures— e.g., BNSF could redact irrelevant, sensitive information (e.g., social security numbers) prior to production and then designate the remainder of the information under a standing protective order.  These are standard discovery practices and should not be controversial.

Based on all of the above, the court finds the requested materials are relevant to Tierney's claims and not disproportionate to the needs of the case.  Tierney's motion is thus GRANTED with respect to Request No. 5, insofar as it relates to responsive materials within BNSF's master electronic database for the ten years leading up to Tierney's injury.  Essentially, BNSF should re-run the search it did with this broader geographic and temporal scope and, if the search reveals an incident, BNSF should gather and produce the related documentation. BNSF is ORDERED to complete its production of responsive documents within 21 days of this order.  To facilitate production of confidential information, the parties are ORDERED to meet and confer on the terms of a standing protective order and submit their proposal to the court within 10 days of this order.

### 2. E-mail to Marty Christenson

Tierney seeks to compel BNSF to produce an email that he reportedly sent to Marty Christenson, a BNSF foreman, regarding an incident involving a PowerPusher that Tierney observed in the Superior carshop in March 2022, along with any related correspondence. Tierney reports that he searched for the e-mail to produce it himself, but he could not find it because his BNSF account was set to delete e-mails after 30 days, and that period had elapsed by the time he searched for it.  Dkt. 13, Tierney Dep., at 115:20-25, 146:10-147:14; Dkt. 11, Tierney Decl., ¶¶ 1-5.  Tierney now asks BSNF to produce the e-mail, arguing that BNSF was on notice about his claims involving the PowerPusher and had a duty to preserve the e-mail, even if Tierney himself did not preserve the information.  Dkt. 10 at 8 n.4.

BNSF does not dispute that such an e-mail would be relevant to the case.  Rather, BNSF takes issue with the timing of Tierney's request.  Per BNSF, Tierney did not alert BNSF to the existence of the e-mail until "far beyond the deletion timeframe of any alleged email."  Dkt. 17 at 32.  BNSF points out that Tierney had a duty to preserve the e-mail but failed to do so, even after he reportedly told his counsel about it.[3]  *Id.*  Even so, BNSF submits testimony from Mr. Christianson averring that he searched for the e-mail but did not find it.  Dkt. 22, Christianson Decl., ¶¶ 1-3.  But that would be expected if Mr. Christianson's e-mail account was set to delete e-mails after 30 days, like Mr. Tierney's.

---

[3] The parties accuse one another of breaching their duty to preserve this e-mail, but neither party moved for sanctions and thus the issue is not ripe for the court's consideration. Regardless, the court need not decide whether there was a duty to preserve or whether any such duty was breached to decide the motion to compel.  If the parties wish to pursue sanctions, they should submit motions in conjunction with motions for summary judgment or pretrial motions so the value of any missing evidence can be assessed in context.

BNSF does not state that it searched any central repository of e-mails or explain how that would be unduly burdensome.  It is difficult to see how that would be the case given the discrete nature of the request.  Based on all of the above, the court finds the e-mail, if it exists, is relevant to Tierney's claims and a system search for the e-mail is not disproportionate to the needs of the case.  Tierney's motion is thus GRANTED with respect to this e-mail.[4]  If BNSF houses employee e-mails in a central repository and still maintains those from March 2022 in the ordinary course of business, it is ORDERED to search the repository for responsive e-mails sent from Mr. Tierney to Mr. Christianson from March 2022 and to supplement its production within 21 days of this order.

**B.  Notice of deposition topics**

Tierney also seeks to compel BNSF to prepare a corporate representative to testify on certain topics.  Under Rule 30(b)(6), a party may depose an organization through its chosen designee.  Fed. R. Civ. P. 30(b)(6).  A request to depose under this rule must describe with reasonable particularity the topics for examination.  *Id.*  The responding organization then has an obligation to prepare the designated person on those topics to testify about information known or reasonably available to the organization.  *Id.*  Like all discovery, these topics must respect the relevancy and proportionality standard set forth in Rule 26.  *Gaylor v. Lew,* No. 16-CV-215-BBC, 2017 WL 3530861 at *1 (W.D. Wis. Feb. 21, 2017).

---

[4] In a single sentence, Tierney also asks the court to compel BNSF to "to produce system-wide records of other reports of Nu-Star PowerPusher malfunctions, misfunctions, defects, or glitches." Dkt. 10 at 18.  This is a threadbare request with no factual or legal development and so it is DENIED.

The parties have reached agreement on some of the topics in Tierney's amended Rule 30(b)(6) notice.  There are five topics in dispute, three of which have corresponding document requests.

### 1.  Topic No. 1 / Document Request No. 1

Tierney asks BNSF's corporate representative to testify to all training BNSF provided all employees regarding the proper operation of any PowerPusher machine from 2010 to present.  Topic No. 1 reads:

> All training BNSF provided to its employees regarding the [safe] proper operation of the PowerPusher machine of any make or model [from 2010 to present].

Dkt. 12, Fuller Decl., Exh. 15 at 2; Dkt. 18, Kane Decl., Exh. 22 at 2 (as amended).

Tierney argues that system-wide training information will shed light on whether BNSF met its duty of care to provide Tierney with a safe workplace.  Dkt. 10 at 21.  Per Tierney, obtaining training information from the entire system would allow for a comparison between carshops to "ascertain if BNSF's training protocols are subpar." *Id.*  But there is no indication that BNSF's other facilities are exemplars of training on the PowerPusher or otherwise.  More relevant are those published materials that BNSF provides its employees, which BNSF has already produced.  Dkt. 20, Stockman Decl., ¶¶ 2-3, Exhs. 1 & 2.  Tierney also argues that BNSF put system-wide training "squarely at issue" because BNSF alleged that Tierney failed to comply with his training.  Dkt. 10 at 21.  But, as BNSF points out, these arguments do not explain why discovery would need to go beyond the Superior carshop or its published materials.  What matters in these inquiries is what training BNSF provided to Tierney and what Tierney did with that training.  So, the court is skeptical about the relevancy of this topic and its overall value to the case.

Even if there was some small modicum of relevancy and value, the court would find it outweighed by the burdens associated with preparing testimony on this topic.  BNSF has submitted sworn testimony demonstrating that getting a corporate representative up to speed on system-wide training on the PowerPusher would require speaking to individuals at each of the 50 facilities where it has car repair tracks.  Dkt. 20, Stockman Decl., ¶¶ 4-7.  And this would be further complicated by the turnover in personnel that most certainly has occurred since 2010.  Tierney notes in opposing BNSF's motion for protective order that BNSF would only need to check with facilities that have a PowerPusher, dkt. 27 at 5, but the legwork would still need to be done to make even that determination.

For these reasons, Tierney's motion is DENIED, and BNSF's motion is GRANTED with respect to Topic No. 1 and its associated document request.  BNSF's corporate representative may prepare and testify to information specific to the Superior carshop from 2010 to present.

### 2.  Topic No. 5 / Document Request No. 5

Tierney asks BNSF's corporate representative to testify to BNSF's knowledge of recommended practices and protocols for maintenance of PowerPushers, as well as maintenance BNSF did on any PowerPusher in the BNSF system from 2010 to present.  Topic No. 5 reads:

> BNSF's knowledge of any and all recommended practices or protocols regarding maintenance, upkeep, and/or servicing of the subject PowerPusher and any other PowerPusher of the same or updated make or model owned or used by BNSF at any location from 2010 to present, and BNSF's performance of such maintenance, upkeep, and/or servicing, or lack thereof.

Dkt. 12, Fuller Decl., Exh. 15 at 3; Dkt. 18, Kane Decl., Exh. 22 at 2.

This topic has two parts.  The first relates to BNSF's knowledge of recommended practices and protocols regarding PowerPusher maintenance—that part does not appear to be in dispute.  The second relates to BNSF's system-wide performance of such maintenance from 2010 to present—that part is in dispute.

Tierney argues system-wide information concerning BNSF's maintenance of PowerPushers will reveal whether BNSF experienced reoccurring issues or defects with that machinery.  Dkt. 10 at 23.  BNSF protests that knowledge of required maintenance to another PowerPusher at another shop cannot be imputed to the Superior carshop, dkt. 17 at 25-26, but that misses the point.  If BNSF experienced a rash of PowerPusher malfunctions and repairs across multiple carshops (or not), that information speaks to whether Tierney's accident was reasonably foreseeable and whether BNSF was exercising reasonable care in continuing to use the PowerPusher at-issue in this case.  So this topic does seek some relevant information.

But the court must balance this relevance against the burdens associated with preparing testimony on the topic.  BNSF has submitted sworn testimony that maintenance records for PowerPushers are not maintained in a central, searchable, system-wide repository.  Dkt. 23, Baldwin Decl., ¶¶ 3-7.  A corporate representative would need to speak with employees from the 50 car repair facilities to prepare to testify on this topic.  *See id.*  But being big and spread out is not a shield to discovery, particularly when the information at-issue is relevant and valuable to the case.  For this topic, the court finds the balance tips in favor of Tierney—to a degree.  BNSF has offered a compromise to have its corporate representative prepare to testify on this topic for the Twin Cities division.  Dkt. 17 at 9.  That is a reasonable compromise, as it gives Tierney a window into PowerPusher maintenance beyond the Superior carshop, while curtailing the burdens associated with preparing to testify to the practices at multiple locations.

10

For these reasons, Tierney's motion and BNSF's motion are each GRANTED in part and DENIED in part with respect to Topic No. 5 and the associated document request.  BNSF's corporate representative must prepare to testify on the topic for the Twin Cities division for the five years preceding Tierney's accident.  BNSF must also supplement its document production to produce records associated with the maintenance of PowerPushers within this geographic and temporal scope.

### 3.  Topic No. 9 / Document Request No. 10

Tierney asks BNSF's corporate representative to testify to BNSF's purchase of PowerPushers, modifications to PowerPushers, and replacement parts for PowerPushers.  Topic No. 9 reads:

> BNSF's purchase history of PowerPushers, including but not limited to purchases of the same make and model as the subject PowerPusher, any updated PowerPusher make or model, any requested changes or modifications to any purchased PowerPusher, and any replacement parts that pertain to PowerPushers, from 2010 to present.

Dkt. 12, Fuller Decl., Exh. 15 at 5; Dkt. 18, Kane Decl., Exh. 22 at 2.

Tierney argues this topic is relevant because it will "shed[] light on BNSF's maintenance, repair, and replacement practices," dkt. 10 at 25, but that information is already covered by Topic 5, discussed above.  Tierney also argues that this topic will show whether BNSF was aware of defects or malfunctions and continued to purchase the PowerPushers or failed to replace or repair parts.  *Id.*  But the only purchase that should matter for this case is the PowerPusher at-issue.  The court fails to see how this topic adds any value beyond that already offered by Topic 5.  Moreover, as BNSF rightly points out, this case does not involve allegations of defective components or replacement parts.  Dkt. 17 at 30-31.

Because the information sought by this topic is largely irrelevant and otherwise is duplicative of information sought by Topic 5, Tierney's motion is DENIED, and BNSF's motions is GRANTED with respect to Topic 9 and its associated document request.

### 4. Topics Nos. 6 and 10

Finally, Tierney asks BSNF's corporate representative to testify to BNSF's knowledge of PowerPushers equipped with an Ergo handle, the manufacturer Nu-Star, Inc.'s efforts to sell BNSF such equipped PowerPushers, BSNF's purchase of any such PowerPushers, and BNSF's decision not to purchase such a PowerPusher at its Superior location.  These points fall under Topics Nos. 6 and 10, which read:

> BNSF's use and/or ownership of any PowerPusher of any make or model that is equipped with an ergo handle or the "belly switch" anti-trap function at any location from 2010 to present.

> BNSF's knowledge of the Ergo handled model PowerPusher, [communication or other records reflecting that Nu-Star, Inc. marketed, attempted to sell, or sold the Ergo handle to BNSF,] BNSF's use of the Ergo handled model in any facility, and its decisions not to use PowerPushers with the Ergo handle in Superior.

Dkt. 12, Fuller Decl., Exh. 15 at 4-5; Dkt. 18, Kane Decl., Exh. 22 at 2 (as amended) & Exh. 23 (as modified during the parties' meet and confer).

Tierney contends that PowerPushers equipped with an Ergo handle are safer and, had BNSF provided such a model to Tierney, his accident would have been avoided.  Dkt. 10 at 23.  BNSF rejects this line of reasoning, arguing that the correct inquiry is whether BNSF provided a reasonably safe work environment, not the latest and greatest model.  Dkt. 17 at 27.  Nonetheless, BNSF reports that it did conduct an inquiry to determine whether it had purchased an Ergo-handled PowerPusher, which revealed no such purchases.  Dkt. 21, Wright Decl., ¶¶ 4-5, Exhs. A & B.  But a subpoena response from Nu-Star appears to contradict, or

at least modify, this report—Nu-Star produced a quote history to BNSF that included eleven quotes for Ergo-handled PowerPushers and three purchases.  Dkt. 18, Kane Decl., Exh. 32.

BNSF now agrees to produce a corporate representative to testify to the quote history from Nu-Star, Dkt. 17 at 28-29, but the court finds more is warranted.  BNSF must conduct a reasonable investigation to determine whether the reported three purchases did in fact take place, as the quote history suggests, and basic details concerning any such purchases—e.g., date and location.  Even if information concerning alternatives is ultimately not admissible, as BNSF argues, relevancy is all we are concerned with at this juncture, Fed. R. Civ. P. 26(b)(1), and the timing of the quote history and the ultimate purchases is arguably relevant to Tierney's claims.  Moreover, three purchases is a discrete enough subset that tracking them down should not impose undue burden on BNSF.  Finally, BNSF must prepare its corporate representative to testify to "its decisions not to use PowerPushers with the Ergo handle in Superior."  BNSF does take issue with this subpart of Topic 10, and the court finds it both relevant and proportionate to the needs of the case.

BNSF objects to preparing a corporate representative on "communication or other records reflecting that Nu-Star, Inc. marketed, attempted to sell, or sold the Ergo handle to BNSF."  Dkt. 17 at 29.  The court agrees this subpart of the amended Topic 10 offers little value to the case.  Tierney has already received Nu-Star's quote history from Nu-Star itself, and it has failed to explain why communications surrounding the quote history are relevant and proportionate to the needs of the case.

For these reasons, Tierney's motion and BNSF's motion are each GRANTED in part and DENIED in part with respect to Topics Nos. 6 and 10.  BNSF's corporate representative must prepare to testify on these topics, as set forth above.

**C. Relief from the expert disclosure deadline**

In a footnote, Tierney asks for "leave of the expert disclosure deadline," which expired one week from Tierney filing his motion to compel, on June 21, 2024.  Dkt. 10 at 1 n.1. Tierney does not further justify this request.  Without more explanation, the court cannot evaluate, let alone grant, Tierney's request.  Moreover, as BNSF points out, the June 21 deadline already reflects an extension from the original disclosure deadline.  Given Tierney's timing, the court is hard pressed to find good cause for Tierney's requested extension, and it is DENIED.

ORDER

IT IS ORDERED that:

1. Tierney's motion to compel, dkt. 9, is GRANTED in part and DENIED in part, as set forth above.

2. BNSF's motion for protective order, dkt. 24, is GRANTED in part and DENIED in part, as set forth above.

3. The parties are ORDERED to meet and confer and submit a proposed standing protective order to govern the exchange of confidential information in the case within 10 days of this order.  BNSF is ORDERED to supplement its document production as set forth above within 21 days of this order.

4. The parties shall bear their own costs on these motions.

Entered 31st day of July, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge