IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TIMOTHY M. TIERNEY,

                            Plaintiff,

      v.                                                    OPINION and ORDER

BNSF RAILWAY COMPANY,                                        23-cv-477-wmc

                            Defendant.

This is a workplace injury lawsuit brought under the Federal Employers' Liability Act (FELA). Plaintiff Timothy Tierney alleges that he was injured while using a PowerPusher to repair a railcar at defendant BNSF Railway Company's (BNSF) carshop in Superior, Wisconsin. Tierney filed suit, claiming BNSF failed to provide a safe workplace environment, failed to properly inspect, repair and maintain the PowerPusher, and failed to warn him about the PowerPusher. BNSF denies wrongdoing.

Now before the court is BNSF's motion to compel, which primarily concerns Joe Dolan, an investigator who works for the law firm representing Tierney. Dkt. 29. Dolan communicated with certain people the same day as the accident, months before Tierney hired his firm, so BNSF wants Tierney to supplement his discovery responses to account for those communications and to produce Dolan for a deposition. BNSF also asks the court to conduct in camera review of the one communication identified on Tierney's privilege log and to require Tierney to revise his log to include any of Dolan's communications withheld as privileged.

In response, Tierney contends that BNSF did not meet and confer in good faith on certain issues before filing its motion to compel. Tierney also asserts that BNSF's requested information is irrelevant, that Dolan is not a fact witness, and that his knowledge and

communications are protected under the work product doctrine.  Both parties ask for their fees and costs associated with BNSF's motion.

For the following reasons, BNSF's motion is GRANTED in part and DENIED in part, and the parties shall bear their own fees and costs on the motion.

FACTUAL BACKGROUND[1]

**A.  The Incident**

Plaintiff Tierney worked as a carman for BNSF.  Tierney alleges that, on August 24, 2020, he was using a PowerPusher to move a railcar with fellow carman Chris Conway.  Tierney removed his hands from the PowerPusher's throttle to engage the automatic brake, but the PowerPusher did not stop as it should have.  The PowerPusher pinned Tierney to some machinery and continued to move in reverse, crushing his abdomen, until Tierney forced the PowerPusher forward.  Tierney called his coworker and union representative Marty Christianson, who went to the car shop in Superior, spoke to Tierney, and had the on-duty foreman drive Tierney to the hospital.

Within an hour of the incident, Christianson received a text message from Joe Dolan, an investigator working for the law firm that Tierney later hired to represent him in this case.  Dolan asked Christianson if Tierney was on the way to the hospital, and he told Christianson to "[m]ake sure [Tierney] does[n']t fill out anything" and to send his number to Tierney.  Dkt. 31-2 at 1.  The next day, August 25, Dolan told Christianson that he had sent Tierney "a message."  *Id.* at 4.  When Christianson told Dolan that "management" might "try to see"

---

[1] These facts are taken from Tierney's complaint, Dkt. 1, and from the parties' briefing and exhibits.

Tierney, Dolan responded that Tierney "knows not to let him in." *Id.* Christianson then informed Dolan that a BNSF claim representative would be interviewing Conway, and Dolan advised that Conway should "[m]ention lights. Equipment. No hurry. Safe worker. Unless they were rushing them." *Id.* at 3. Dolan also answered questions Christianson asked about BNSF's procedure for reporting injuries. Dkt. 31-2 at 3–4.

Tierney recalled that, while in the hospital in the days after the accident, he updated Christianson on how he was recovering and indicated that he "didn't have intentions of suing but it depended on the seriousness of [his] injuries." Dkt. 31-11 at 4. BNSF received notice of representation from plaintiff's present litigation counsel five months later, on January 27, 2021. About two weeks afterward, on February 10, Christianson sent Dolan photographs of the allegedly defective PowerPusher and of the transcription of Conway's statement to the BNSF claim representative. Tierney filed suit several months later on July 14, 2023. Dkt. 1.

Attorney Thomas Fuller, who represents Tierney, attests that Dolan "worked closely with me to assemble information in anticipation of litigation and in determining possible theories of liability and litigation strategies" but did not "conduct his own factual investigation following the incident" and was not present during BNSF's factual investigation. Dkt. 34, ¶¶ 3–4. Dolan similarly attests that after Tierney was injured, he "tried to gather information about what happened to assess if Mr. Tierney had viable claims and to prepare for future litigation" at the direction of his law firm. Dkt. 35, ¶ 3. He further attests that he has searched for correspondence other than that discussed above "regarding gathering information to assess whether Mr. Tierney has any viable FELA or state claims" with any BNSF employee or other witness "but did not find any." *Id.*, ¶ 7.

**B. BNSF's Discovery Requests and Tierney's Responses**

BNSF served interrogatories and requests for production of documents on Tierney on

October 18, 2023.  Relevant here, BNSF asked Tierney to:

- Interrogatory 4:  "Identify any and all photographs obtained by Plaintiff, Plaintiff's attorneys, and/or Plaintiff's agents or representatives that are related in any way to the Incident, equipment, and/or tools involved in the Incident, the area where the Incident occurred, and /or regarding any injuries allegedly sustained as a result of the Incident, including photographs taken with any cellular telephone," *Id.* at 4;

- Interrogatory 5:  "Identify each and every person that Plaintiff knows, or who Plaintiff believes may know, any knowledge or information as to the facts and circumstances of the Incident, the facts and/or documents identified and described in your Answers to these Interrogatories, and/or that Plaintiff knows or believes may have knowledge or information concerning or related to the injuries and/or damages claimed to have been sustained by Plaintiff as a result of or in relation to the Incident," *Id.*;

- Interrogatory 7:  "State with specificity all facts, documents, and witness testimony or evidence you have which support your claim that the location where you were required to perform job duties did not have adequate lighting, as alleged in Paragraph 10 of your Complaint," *Id.* at 8;

- RFP 14:  Produce "[c]opies of all photographs and video, including but not limited to photographs taken with a cellular telephone or any other similar electronic device, diagrams, videotapes or other photographic or nonphotographic visual representations, or illustrative documents related to the Incident or the site of the Incident, and/or claims, injuries and damages alleged in Plaintiff's Complaint," Dkt. 31-7 at 5.

- RFP 21:  Produce "[a]ny and all documents generated and/or received by your employment union and/or any members of your employment union, including but not limited to any communications, correspondence, and/or meeting or discussion notes, related in any way to the equipment, lighting, and site of the Incident, and/or the Incident described in your Complaint," *Id.* at 7;

- RFP 22: Produce "[a]ny and all communications in your possession, custody or control, including but not limited to voicemail messages, electronic mail messages, text messages, and/or any other type of electronic message or recording, that is not privileged, that describes, discusses, and/or related to the Incident, the site of the Incident, the equipment involved in the Incident, the lighting at the site of the Incident, the alleged injuries and damages Plaintiff

4

claims relating to the Incident or any other allegation described in your Complaint," *Id.* at 7;

- RFP 23: Produce "[a]ny and all documents containing, referring or relating to any facts which Plaintiff alleges support his claims in this lawsuit," *Id.* at 8;

- RFP 24: Produce "[a]ll documents that reflect, describe, summarize or refer to the Incident or the claims and damages as alleged in Plaintiff's Complaint, including all electronically stored information such as but not limited to email, voice mail, text messages, social media, blogs, messaging applications, and journals," *Id.*; and

- RFP 27: Produce "[f]or each witness who may testify at trial, provide all documents given to said witness and all documents received from the witness," *Id.* at 9.

Tierney's written responses do not identify Dolan, and they do not include any information about his involvement in this case. *See* Dkts. 31-6, 31-7, 31-11 & 31-12. Tierney also asserts in his written responses that he (Tierney) has no photographs of the allegedly defective PowerPusher. Dkt. 31-6 at 4 & Dkt. 31-7 at 5.

BNSF learned of Dolan when its employee Christianson disclosed the pre-lawsuit text messages between him and Dolan in June 2024. Dkt. 30 at 7. Christianson had searched his correspondence in response to Tierney's request for production seeking an email Tierney had allegedly sent Christianson. Christianson did not find the email, but he did find his text messages with Dolan. So, BNSF produced those messages and the photographs Christianson had exchanged with Dolan and asked Tierney to supplement his discovery responses to account for information about Dolan's involvement in the aftermath of the accident. Tierney objected, including based on privilege, and this motion followed.

## C. Tierney's Privilege Log

Tierney served a privilege log, but like his discovery responses, it also does not identify any correspondence involving Dolan. The sole entry describes a March 21, 2022

5

"Communication (text message) from Client to HLK Attorney" and asserts protection under the attorney-client privilege. Dkt. 31-9. Tierney testified at his deposition that he texted his lawyer about the incident. Dkt. 13 at 147:2–11.

**D. The parties' attempt to meet and confer**

BNSF's law firm contacted Tierney's law firm in June 2024 via letter requesting "immediate supplementation" of Tierney's discovery responses in light of the recently disclosed text messages between Dolan and Christianson. Dkt. 31-8 at 1. BNSF's counsel stated that "any correspondence between [Dolan] and witnesses should have been produced" and asked for a privilege log accounting for Dolan's correspondence if plaintiff's counsel intended to assert a privilege claim. *Id.* BNSF also noticed Dolan's deposition.

The attorneys exchanged emails in advance of their meet and confer. Defense counsel clarified that BNSF was not seeking Dolan's communications with Tierney, but was seeking Dolan's communications with Christianson and other fact witnesses that predated notice of representation. Dkt. 31-13 at 2–3. Defense counsel asked for information about Dolan's "activities, communications, and instructions to personnel" after the incident and before the "formation of an attorney client relationship." *Id.* at 2. Plaintiff's counsel responded that these concerns "were overblown" and that the text messages "related to a wholly irrelevant pizza party in Duluth." *Id.*

Plaintiff's counsel attests that he conferred telephonically with defense counsel on July 11, 2024 about Dolan and that, when asked, defense counsel could not give him any example of a question or topic she would ask Dolan at a deposition. As of the parties' briefing, Tierney has refused to supplement discovery or to produce Dolan for a deposition.

LEGAL STANDARD

Whether information is discoverable is governed by the Federal Rules of Civil Procedure.  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).


ANALYSIS

BNSF wants Tierney to supplement his discovery responses to include information concerning Dolan's communications with fact witnesses about the incident from before his law firm was hired and to produce Dolan for a deposition.  BNSF also asks the court to determine whether the text message referenced on Tierney's privilege log is privileged via in camera review and to require Tierney to provide an amended privilege log that accounts for Dolan's communications.

## A.  The parties' obligation to meet and confer

As a threshold matter, Tierney claims that BNSF did not make sufficient efforts to meet and confer as required by Rule 37(a)(1) regarding some of the issues it now raises in its motion to compel.  Specifically, Tierney contends that defense counsel did not discuss:  (1)  plaintiff's production of the PowerPusher pictures and investigative statement Christianson sent to Dolan;  (2)  the insufficiency of the privilege log entry about Tierney's text message to his

attorney; and (3) Tierney's obligation to identify Dolan's messages to Christianson on his privilege log.

Rule 37(a)(1) requires all litigants seeking to compel discovery to certify that the movant has conferred in good faith with the party from whom they seek discovery. Fed. R. Civ. P. 37(a)(1). This requirement is not a meaningless formality. Premature motions to compel discovery are likely to fail and thus waste the court's and parties' time. Yet, satisfying the rule does not require multiple attempts to resolve disputes, let alone exhaustive effort. *Lacy v. Anderson*, No. 20-cv-1014-jdp, 2022 WL 19247, at *1 (W.D. Wis. Jan. 3, 2022). If the contrary were true, a recalcitrant party could thwart discovery by making incremental moves towards resolution, only to ultimately hold out on legitimate requests.

Based on the record, the court finds BNSF met its obligations. Specifically, the parties exchanged written correspondence and met and conferred telephonically about the disclosure of Dolan's communications. The parties' correspondence makes clear that BNSF thought that Dolan and Christianson's messages should have been disclosed and was requesting "any correspondence between Joe Dolan and witnesses to this case," not duplicative production of what BNSF had already found and produced. Dkt. 31-8 at 1. BNSF also asked for a privilege log that accounted for Dolan's communications. *Id.*

As the party now asserting privilege, it is Tierney's obligation to provide a rule-compliant log, not BNSF's responsibility to exhaustively prod its production. *See* Fed. R. Civ. P. 26(b)(5)(A) (describing the asserting party's obligations). The cases Tierney cites in opposition do not change the outcome here because BNSF went beyond its letter and engaged with plaintiff's counsel via email and over the phone before seeking court intervention. *See* Dkt. 33 at 10-11. The court will not disregard some of BNSF's grounds for relief based on an

8

alleged failure to sufficiently meet and confer, nor will the court order the parties to try again at this point in light of the fully briefed motion to compel.  *See Voss v. Marathon County*, No. 18-cv-540-jdp, 2020 WL 1139860, at *3 (W.D. Wis. March 9, 2020) (finding that conferring would be unproductive in light of the parties' fully briefed motion to compel and unchanging positions).

With this issue resolved, the court will address BNSF's discovery request and deposition arguments before turning to Tierney's privilege log.

**B. BNSF's request for supplemental discovery responses**

The lynchpin of the parties' dispute is whether communications Dolan had with fact witnesses before Tierney hired his firm[2] are protected as work product.[3]   Rule 26(b)(3), commonly known as the "work product rule," prohibits discovery of otherwise-discoverable "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  The burden of establishing a privilege or protection rests on the party invoking it.  *United States v. Nobles*, 422 U.S. 225, 237–38 (1975).  As explained below, Tierney has not satisfied his burden here.

---

[2] The court finds that an attorney-client relationship formed no later than January 27, 2021, based on the letter of representation Tierney's law firm sent to BNSF on that date.  Dkt. 31-3.   The record is unclear when Tierney began communicating with the firm regarding representation or when he signed an agreement with the firm.   It is Tierney's burden to establish a privilege or protection exists and thus his burden to show when representation started.  The current record supports nothing more definitive than January 27, 2021.

[3] In opposition to BNSF's motion, Tierney casts dispersions on defendant's discovery responses and privilege log and suggests that BNSF routinely engages in "witness abuses" when it anticipates litigation, citing to a Southern District of Iowa case.  Dkt. 33 at 6.  The court disregards these comments.  Of concern to this court is the parties' conduct in this case, and at issue here are Tierney's discovery responses and privilege claim.

The work product rule is intended to protect attorney thought process and mental impressions and extends only to documents that were created in anticipation of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983). The test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (citation omitted). "[A] remote prospect of future litigation is not sufficient to invoke the work product doctrine." *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 65 (7th Cir. 1980). Of the two categories of work product, opinion work product that reflects the attorney's mental processes is more "scrupulously protected" than fact work product. *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000).

The Seventh Circuit has further elaborated that the standard requires distinguishing between materials prepared in the ordinary course of business "as a precaution for the remote aspect of litigation" and those prepared "because some articulable claim, *likely* to lead to litigation ... ha[s] arisen." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) (emphasis in original). For example, if a company investigates an accident or event as an ordinary business procedure, any investigative documents born out of that investigation are not privileged work product. *Nat'l Presto Indus.*, 709 F.2d at 1118–19. Thus, whether a document is protected work product "depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc.*, 195 F.R.D. at 614.

BNSF asks for Tierney to supplement his discovery responses to account for the communications Dolan had with fact witnesses before Tierney hired his law firm. In support of its requests, BNSF points to Dolan's message to Christianson advising what Tierney's fellow carman Conway should say in his investigatory statement about the incident. BNSF also notes

that Tierney has denied possessing any photographs of the PowerPusher, even though Christianson sent photographs of the machine to Dolan about two weeks after Tierney hired legal representation.  BNSF contends that these messages and photographs should have been produced or at least disclosed on a privilege log.  Dkt. 30 at 23.

Tierney's primary argument in opposition is to broadly claim work product protections over Dolan's involvement in this case.  But a party cannot resist discovery based on generalized assertions of privilege or work product protections.  Rather, such claims "must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (rejecting blanket claim of attorney-client privilege); *see also United States v. Whit*e, 950 F.2d 426, 430 (7th Cir. 1991) (same).  This is in part because questions of privilege and work product are fact-intensive, and the court cannot rule with any specificity when a party makes generalized privilege claims over large swaths of discovery.

The court overrules Tierney's blanket work product claim as to Dolan's pre-representation communications.  Again, the issue is whether certain documents or information were generated in anticipation of litigation.  Plaintiff's counsel attests that Dolan helped him prepare this case, and Dolan attests that he did not conduct his own factual investigation, but that does not mean that Dolan did not also insert himself into the facts of this case early on.  Some of Dolan's text messages to Christianson in the first few days after the incident show him consulting with the union representative on how to approach BNSF's investigation, including suggesting that Tierney should wait to fill out forms and not allow management into his hospital room.  Dolan also gave guidance on how Conway should present the incident in his investigative statement.  These communications were made with nonparties, so they are

neither privileged nor confidential.  Moreover, the communications were made five months before Dolan's law firm began representing Tierney, when Tierney was still expressing uncertainty about filing suit.

It is unclear from the record precisely when Tierney's intentions shifted firmly towards filing suit.  Both parties cite to the comment Tierney made to Christianson while still in the hospital that he "didn't have intentions of suing but it depended on the seriousness of [his] injuries."  Dkt. 31-11 at 4.  While Tierney's comment suggests that he was aware soon after the incident that he could sue and possibly would, the comment reveals that litigation was more of "a remote prospect" at that stage than the level of anticipation of litigation needed to invoke work product protections.  *In re Special September*, 640 F.2d at 65.  As the party asserting work product protections, it is Tierney's burden to better define the timing and evolution of his decision to file suit.  He has failed to do so.

Moreover, there is no indication when Dolan learned about Tierney's eventual intention to sue or when Dolan learned Tierney became a client of the firm.  The work product doctrine protects only "documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative*."  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). Tierney has not explained how Dolan could have been preparing information for him when he had yet to hire his firm.  Again, this is Tierney's burden.  Based on the totality of the facts, the court is persuaded that Dolan may have viewed Tierney as a prospective client for his firm, but that does not carry the burden.  Tierney has cited no authority—and the court's own research has revealed none—that extends work product protections to factual information an investigator learned months before the client was signed.  Without authority on-point, this court will not create broader protections than the rule already affords.

Tierney argues that supplementation is cumulative because BNSF already has certain text messages between Dolan and Christianson. But BNSF does not ask for duplicative production of what it already has. BNSF asks for supplementation that accounts for any other pre-representation communications Dolan had with witnesses. BNSF points to its discovery of Dolan's text messages only as support that more such information may yet exist. Tierney's admission that there is an additional photograph of the PowerPusher that has not yet been disclosed speaks to BNSF's suspicions.[4] Tierney has not amended his discovery responses to indicate, as Dolan attests, that no more such information exists, or made a privilege log that accounts for the information that does. As a result, the court cannot rule with specificity on what information or documentation is privileged beyond what has been produced.

Nor can the court say any such disclosures would be irrelevant, as Tierney also argues. Dkt. 33 at 9. Dolan insists he had no involvement in the factual investigation following the incident. Dkt. 35, ¶¶ 5–6. But this contention simply does not square with the record, which shows Dolan communicating with Christianson, including about how Tierney's coworker Conway should present his version of events to BNSF. Even if Dolan did not take photographs or videos related to the incident, or inspect or witness any inspection of the equipment, his pre-representation communications with fact witnesses are at least facially relevant, not confidential, and not protected from discovery. To be fair, some of Dolan's correspondence

---

[4] Tierney explains in his opposition brief that Christianson sent Dolan eight photographs of the PowerPusher on February 10, 2021, but BNSF produced only seven of these photographs during discovery. Dkt. 33 at 12 n.5. He argues that disclosure of the remaining photograph now would be "unnecessarily duplicative" because the photograph "shows an angle of the PowerPusher at issue that is depicted in several other photos that have been produced." *Id.* But if that is the case, then there would be no harm nor undue burden in the production of this lone photograph, so the court will order Tierney to produce it, and BNSF can judge its value for itself.

with Christianson is unrelated to this case, as it concerned topics such as hunting and paying for pizza and soda, but that correspondence can be easily winnowed from the communications that do relate to Tierney's claims.

Dolan attests that there is nothing else beyond what BNSF already knows.  If so, Tierney must update his discovery responses to account for Dolan's pre-representation communications that have been disclosed and to confirm that there are no other such communications.  Tierney is ORDERED to complete this supplementation by November 13, 2024.[5]

## C.  BNSF's request to depose Dolan

Tierney also objects to defendant deposing Dolan on the same ground of work-product protection.  But this blanket claim of privilege does not shield Dolan from deposition either, especially here where, as discussed above, Dolan had pre-representation communications with

---

[5] In opposition, Tierney makes a conditional request that, should the court allow discovery to reach Dolan's communications, the court should similarly allow Tierney to depose all of BNSF's law firm's employees and discover all of their communications with witnesses. Dkt. 33 at 10-11.  This is an improper request to raise in a response brief, and the court will deny it on that ground alone.  But more importantly, Tierney's request draws a false parallel between Dolan's activities and those carried out by retained counsel and their employees on behalf of their clients.  To be abundantly clear:  This opinion should not be read so broadly as to authorize discovery into the inner workings of retained counsel and their employees.  It is well understood that work product held by counsel and their employees is shielded from discovery by various privileges and protections.  *See, e.g.*, *Caremark, Inc.*, 195 F.R.D. at 614 (whether work product privilege applies "depends on the motivation behind [a document's] preparation, rather than on the person who prepares it"); Upjohn Co. v. United States, 449 U.S. 383, 394–99 (1981) (The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice).  This is a unique case where a law firm investigator became factually involved in the events underlying a later-brought suit, thus exposing himself and his *pre-representation* actions to discovery.

a non-party about the incident underlying this case.  Dolan may be deposed on his pre-representation activities.

As for Tierney's speculation that BNSF will simply harass Dolan and "intrude into the legal strategies and mental impressions of [plaintiff's] counsel," Dkt. 33 at 9, such questioning would be obviously inappropriate.  The parties are ORDERED to meet and confer a week in advance of Dolan's deposition to discuss general topics that the deposition will explore.[6]  If Tierney is concerned about a particular topic and the parties cannot agree beforehand, Tierney may seek a protective order precluding questioning about privileged topics before he is deposed.

Finally, Tierney may assert any relevant privileges and objections to specific questions during the deposition, and the parties may call the court for real-time rulings as necessary.  This will allow the court to rule with specificity on specific lines of questioning and specific objections.  *See N.L.R.B. v. Modern Drop Forge Co.*, 108 F.3d 1379, 1997 WL 120572, at *2-3 (7th Cir. 1997) (approving approach of requiring the parties to proceed to deposition and to assert their privileges and objections in the deposition).

## D. Tierney's privilege log

The court will also require Tierney to produce an amended privilege log.  BNSF takes issue with Tierney's log, which contains one entry asserting that a March 21, 2022 text message from "Client" to "HLK Attorney" is protected by attorney-client privilege.  Dkt. 31-9.  Under

---

[6] Rule 30 does not require a party to submit questions in advance, and BNSF's counsel was justified in not providing examples of such questions during the parties' meet and confer.  Yet, a pre-deposition meet and confer on topics is appropriate under the circumstances.  The court does not expect BNSF's counsel to share their outline for the deposition or get into specific lines of questioning, but the court does expect counsel to generally explain topics that they mean to explore and topics they will steer clear of.  This should help the parties avoid surprise and ensure the deposition goes smoothly.

Rule 26(b)(5), the party claiming privilege must do so "expressly," and describe the nature of privileged documents in a manner that "will enable other parties to assess the claim." In the privilege log, this requires a document-by-document explanation that generally includes (1) the name and job title or capacity of the author(s)/originator(s), (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party, (3) a general description of the document by type, (4) the date of the document, and (5) a general description of the subject matter of the document. *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 380 (S.D. Ind. 2009) (citing *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006); *In re Grand Jury Proc.*, 220 F.3d 568, 571 (7th Cir. 2000)).

Privileges may be waived or inapplicable depending on several factors, all of which should be apparent from the log. The sole entry on Tierney's privilege log lacks crucial information about the text message being withheld, including names of the sender and receiver, a date, or a useful description of the subject matter. Although Tierney now points to his deposition testimony as filling in some of these gaps, he must amend his log to include this clarifying information. For the reasons discussed above, the court ORDERS Tierney to amend his privilege log to account for any of Dolan's communications that he believes are privileged by November 13, 2024.

The court DENIES the request to conduct in camera review as premature for two reasons. First, as noted, Tierney points out that his deposition testimony provides clarifying information, including that he is the author of the text message and that it was sent to his lawyer about the incident, and the court expects he will amend his log accordingly. Second, as Tierney amends his log, he will also account for any of Dolan's communications that he wishes

16

to shield as privileged.  If, upon reviewing the amended log, BNSF still believes in camera review is necessary, it can renew its request.

ORDER

IT IS ORDERED that:

1. Defendant's motion to compel, Dkt. 29, is GRANTED in part and DENIED in part as explained above.  Specifically, by November 14, 2024, plaintiff must:

    a. Produce the remaining undisclosed photograph of the PowerPusher;

    b. Amend his discovery responses to account for Mr. Joe Dolan's pre-representation communications with non-parties or to confirm that no additional such communications exist; and

    c. Amend his privilege log to include clarifying information about his text message to his lawyer and to include those of Dolan's pre-representation communications over which he is asserting privilege.

2. Plaintiff must also produce Dolan for a properly noticed deposition.  The parties are ORDERED to meet and confer a week in advance of Dolan's deposition to discuss general topics that the deposition will explore.

3. The parties shall bear their own costs on this motion.

Entered this 31st of October, 2024.

BY THE COURT:

/s/

_____

ANITA MARIE BOOR
Magistrate Judge